Mr. Justice Shepard
delivered the opinion of the Court:
The bill in this case was filed February 25, 1899, in the *398 Supreme Court of the District to obtain the specific performance of a verbal contract.
It was alleged : That defendant had invented a convenient and cheap method of soliciting trade by mail some time before the year 1892. Early in that year, and before he had obtained a patent for his invention, the defendant came to the complainant, stating that he had purchased a-lot in Superior, Wisconsin, for $100, payable in twenty installments of $5 each, for which he had executed notes, and that ten of the notes had been paid.
Defendant explained the probable value of his invention and desired money to aid in procuring a patent for the same, which patent he expected to exploit through a corporation to be organized therefor. For $45 in cash, he offered to turn over the lot to complainant, who should also assume the ten notes remaining unpaid, and in addition thereto promised to give him one thousand shares of stock in the contemplated corporation.' Complainant accepted the proposition, paid over the sum of $45, and has since paid the remaining notes. The patent was subsequently granted to the defendant, who organized the proposed corporation.
The bill does not state the proposed capital stock of the corporation, nor the ratio of division of the shares, but alleges that the shares were then of the market value of about four dollars each.
Defendant answered the bill under oath. He admits transferring the interest in the lot to the complainant, but says that the cash paid was $30 and not $45 as alleged. He says that at said time no corporation had been formed by him, and there was no suggestion of the amount or value of the shares of a proposed corporation, and no promise to deliver any shares whatever to the complainant. He says that in the year 1893, he organized a corporation under the named alleged, for the purpose of exploiting his invention, and became a stockholder therein.
*399 He further says that afterwards he met complainant, who informed him he was unemployed, was in need of money, and unable to obtain money upon the lot which had proved a bad investment, and thereupon defendant, sympathizing with him, promised to give him fifty shares of his stock. Afterwards, in March, 1896, he voluntarily gave one hundred shares of said stock to the complainant, who up to that time had not claimed any right thereto, or made any demand therefor based on his alleged contract. And he further says that no such claim or demand was ever made until a short time before filing the bill.
The learned justice who presided at the hearing dismissed the bill for the reason, given in a brief opinion, that the evidence on behalf of the complainant did not establish such a complete and certain contract as would justify a decree of performance.
Concurring in this view, it is unnecessary to enter into a consideration of the sufficiency of the allegations of the bill, or of the question of the complainant’s laches.
To overcome the sworn denial of the answer, complainant offered himself and .one supporting witness. The testimony of each was fatally defective because they could not state what was to be the amount of the capital stock of the proposed corporation, or the number and value of the shares into which it would be divided. All that they could say was that the defendant promised to give complainant one thousand shares of the stock when he should organize a corporation. When the corporation was in fact formed, during the following year, the stock was divided into shares of ten dollars each; but it does not appear what was the amount of the authorized capital stock. The supporting witness, who said he was present when the contract was made, does not altogether agree with the complainant. His understanding was that defendant wanted to borrow $100, and offered to give one thousand shares of *400 stock to be issued in the future for it; the Wisconsin lot was a further inducement “ as a sort of collateral security.” He did not hear all of the conversation of the parties, but said that when they came to terms, they stated this agreement to him. The parties — to use his own language— “recited to me that in consideration of one hundred dollars to be given by Mr. Biordan to Mr. Stout, Mr. Stout would give him a thousand shares of stock in a company which was to be formed, as all such things are promoted, and the lot business was only lightly gone over before'me. The main point that I was to bear testimony to and witness was this fact of the stock issue, it being emphasized by both of them.” This witness did not see the delivery of any money. It appears that defendant had first solicited a loan from witness of $100, which he was not able to make, whereupon defendant applied to the complainant.
Complainant, as we have seen, does not claim that he made a loan, but a purchase. For $45 cash he was to have the Wisconsin lot, subject to the unpaid part of its original purchase price, and in addition thereto, one thousand shares of stock in a prospective corporation, the face value of which was not mentioned.
By the averment of the answer which, on this point, has not been overcome by the required weight of evidence, the cash payment was limited to $30.
The vagueness and uncertainty of the testimony are doubtless due, in great pai’t, to the fact that it was not given until seven years after the date assigned to the alleged contract.
But had the authorized capital stock of the proposed corporation, together with the ratio of its division into shares, been testified to, we would not feel warranted in decreeing specific performance upon such evidence, especially in a case where, for an investment of $95, if we accept the complainant’s own figures, he seeks, in addition to the lot which *401 he then received, to obtain the delivery of stock representing $10,000 face value and actually worth $4,000 according to the complainant’s own valuation.
The decree will be affirmed with costs; and it is so ordered.

Affirmed.